Runnie J. BEY, Plaintiff,

v.

Jim CIMAROSSA, et al., Defendants.

No. 96–3251.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 19, 1999.

Runnie Bey, Menard, IL, pro se.

Theodore R. Schullian, Springfield, IL, for defendant.

## *OPINION*

RICHARD MILLS, District Judge.

Plaintiff claims this is no ordinary dog bite case, and that his constitutional rights were violated. But officers acted reasonably and Plaintiff's claims must fail.

## I. BACKGROUND

While on patrol in the early morning hours of April 14, 1996, Officer Andrew Selvaggio of the Springfield Police Department received a dispatch that two black males had robbed the Best Inn and that one of the men had signed his name as "Runnie Bey" on the hotel guest register. Officer Selvaggio later received a dispatch indicating that two black males had committed an armed robbery of the Hampton Inn and had left the scene of the robbery in a white car with a dark top and a missing hubcap. One of the men was reported to be wearing a dark jacket with white stripes.

Officer Selvaggio saw a car matching the description on his way to the Hampton Inn. He followed the vehicle, which was white and had a dark top and was being driven by Plaintiff Runnie Bey (Bey); at some point after he turned onto a roadway referred to as Stuart Street, Bey exited the vehicle and quickly made his way to a nearby residence. Officer Selvaggio used his canine to apprehend Plaintiff, who was finally arrested in the back yard of the that same residence. Bey was later tried by a jury and found guilty of armed robbery.

Bey, proceeding pro se, originally filed an action against Jim Cimarossa and Champion Garage (Champion), alleging violations of his civil rights. After Cimarossa and Champion were dismissed from the case, Bey filed an amended complaint naming as defendants Andrew Selvaggio and Carlos Sours, both officers with the Springfield Police Department. Bey alleges that Officer Selvaggio effected his arrest by commanding his canine to attack Bey and allowing the canine to wound him. He also alleges that at some point in his apprehension, he was sprayed with mace and was kicked by one of the officers. These actions, he contends, constituted use of excessive force by the officer.

Bey further asserts that Officer Sours sold Defendant's vehicle some time prior to Defendant's trial on the charge of robbery. The allegation, apparently, is that this act constituted a violation of Plaintiff's due process rights.

Defendants bring this motion for summary judgment, arguing that there were no constitutional violations and that the officers are entitled to qualified immunity. They argue that their actions were not objectively unreasonable in light of "clearly established" law.

## II. ANALYSIS

### A. Standard for Summary Judgment

In determining whether a genuine issue of material fact exists, the Court must consider

the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. Rule of Civil Pro. 56(c). In conducting this inquiry, the evidence of the non-movant is to be believed, and "all justifiable inferences drawn in his favor." *Matsushita*, at 587, 106 S.Ct. 1348. The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

## B. Excessive Force Claim for Use of Canine to Apprehend Plaintiff

Defendants argue that summary judgment is warranted on Plaintiff's claim that Officer Selvaggio used excessive force during the arrest. They argue that Plaintiff has failed to produce sufficient evidence that the arrest was unreasonable under the Fourth Amendment.

■ In evaluating excessive force claims, the Court is guided by the "reasonableness" standard of the Fourth Amendment. *See, e.g. Jones v. Webb*, 45 F.3d 178, 183 (7th Cir.1995). More specifically, the Court must consider the totality of the circumstances, including several factors: the severity of the crime at issue; the threat posed by the suspect to the officers or others; whether the suspect is resisting arrest or attempting to evade arrest. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court must also take into account that officers often must make split-second judgments when arresting a suspect. *Id.* at 397, 109 S.Ct. 1865. One specific scenario in which a given use of force will likely be deemed excessive is when an officer assaults an individual without any provocation or when an officer pushes or shoves someone without justification. *See Clash v. Beatty*, 77 F.3d 1045 (7th Cir.1996). However, this case is not at all similar to the types of excessive force cases exemplified by the *Clash* case.

Several cases involving the apprehension of fleeing suspects with police dogs have held that the use of a dog to stop a suspect did not constitute excessive force. For example, in *Matthews v. Jones*, 35 F.3d 1046 (6th Cir.1994), the Court held that the use of a dog to apprehend a fleeing suspect did not constitute excessive force. The court also observed that the use of canines in such situations "can make it more likely that the officers can apprehend suspects without the risks attendant to the use of firearms in the darkness, thus, frequently enhancing the safety of the officers, bystanders, and the suspect." *Jones* at 1051, citing *Robinette v. Barnes*, 854 F.2d 909, 914 (6th Cir.1988). It should be noted that the suspect in *Jones* was fleeing into a wooded area, while in this case Bey was fleeing into a residential neighborhood.

■ Here, the first factor identified above is easily met. Officer Selvaggio's uncontradicted affidavit shows that around 5 o'clock in the morning on April 14, 1996, he received a radio dispatch indicating that the Best Inn in Springfield, Illinois, had been robbed by two black men. The report indicated that one of the men signed his name as Runnie Bey on the hotel guest registration card and that he brandished a large knife and demanded money. Further, the report indicated that one of the men was wearing a dark jacket with white stripes on the sleeves and that the men

were driving an older model white car with a dark top and a missing hubcap.

Around 5 o'clock, the undisputed evidence shows that Officer Selvaggio saw the vehicle that Runnie Bey was driving, which was a white Mercury Marquis with a top of a darker color. After seeing the officer, Bey then proceeded in the vehicle to Stuart Street, where he quickly exited the vehicle.[1] Officer Selvaggio came upon the abandoned car some seconds after Bey had exited the vehicle. Bey himself testified in his deposition that he was seeking to evade police inquiry when he proceeded to Stuart Street because "maybe" he "had a couple of beers" and because he did not wish to be caught driving without proper insurance. He also admitted during his deposition that as he sought to avoid police questioning by exiting the vehicle, he "kind of walked a little fast" away from his vehicle. He admitted as well that he was wearing a dark coat with white stripes on the sleeves. Bey was finally captured in the back yard of a home on Stuart Street, where a large knife was also found.

Bey asserts that the police dog was unleashed on him as he was standing in the yard of the residence and that the officer shouted no warning before allowing the dog to subdue Bey. He also asserts that he was kicked at some point in the altercation and that he was sprayed with mace. He has not pointed to any evidence in the record which supports these contentions. Further, these facts, even if accepted as true, do not prevent the entry of summary judgment in this case.

First, Bey admitted that the reason he exited his vehicle in the first place was to avoid police inquiry. He testified in his deposition that he had exited his vehicle and was already in the yard of a residence when police arrived on the scene. He admits that when he was finally captured in the back yard of the residence, he was still struggling with the dog and that he did not obey police commands to take his hands out from under his body. In his complaint, Bey himself avers that Officer Selvaggio believed that Bey was a suspect in an armed robbery when he

sought to capture Bey with the use of his dog. Bey does not identify the type of kick he allegedly suffered, and he did not set out any facts regarding the time at which he was allegedly maced. Certainly some rough treatment is to be expected in a police encounter such as this, where police are pursuing a fleeing suspect who is believed to be armed with a large knife and who is not cooperating with police commands. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Bey admits that he did not indicate to Officer Selvaggio that he was seeking to surrender; instead, he states that he saw no reason to say anything to the officer. His injuries required stitches, but Bey suffered no broken bones or other more serious injuries during his capture by the police officers.

It is clear from the evidence before the Court that Bey was suspected by police of having committed a serious crime and that he was seeking to evade police and posed a danger to officers or to others in the vicinity. He had not been handcuffed or otherwise subdued at the time of the alleged attack by the dog or when he was allegedly kicked and maced. Bey himself testified that he ran from the dog and police to the rear of the house and that he did "possibly" kick at the dog, and that he did not obey officers' commands to move his arms out from under his body when he was finally apprehended. In short, Bey has failed to produce sufficient evidence to support his claim that the officers used excessive force to apprehend him during his early morning arrest on April 14, 1996. In such circumstances, it is not unreasonable to use a police dog to apprehend a suspect who was reported to have committed an armed robbery and to be armed with a large knife and who has fled from police into a residential neighborhood. Summary judgment on this claim is therefore appropriate.

## C. Due Process Claim for Sale of Impounded Vehicle

Defendants argue that summary judgment is warranted on Plaintiff's claim that his due

---

1. The evidence is disputed as to whether another occupant was in the vehicle with Bey, and whether that occupant also exited the vehicle prior to officers' arrival. That dispute is immaterial, however, regarding the reasonableness of the force used to arrest Bey.

process rights were violated when his vehicle was sold by Officer Sours.

■ It is clear that in order to support a claim that the loss or destruction of evidence implicated the Due Process Clause, bad faith on the part of police must be shown. *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). Generally, this means that Plaintiff must show "official animus" or a "conscious effort to suppress exculpatory evidence." *United States v. Zambrana,* 841 F.2d 1320, 1341–42 (7th Cir.1988) (quoting *California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). Moreover, the destroyed evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta,* 467 U.S. at 488–89, 104 S.Ct. 2528.

■ Here, Plaintiff has not submitted any evidence that the disposal of his vehicle was done in bad faith nor has he produced any evidence that the exculpatory value of the vehicle was evident. Plaintiff admitted in his deposition that he had no idea what Officer Sours knew or what he should have known regarding Plaintiff's criminal trial. Officer Sours' affidavit shows that he had no information that Plaintiff's vehicle was possible evidence in a criminal trial. Officer Sours also indicates that the car was disposed of in accordance with normal procedures, which included sending a certified letter to Plaintiff's last known address.

Thus, it is clear that Plaintiff has not produced any evidence that would tend to show bad faith on the part of Officer Sours, nor has he produced any evidence that the vehicle's exculpatory value was apparent. Summary judgment is therefore appropriate on this claim.

*D. Qualified immunity.*

As an alternative ground for their request for summary judgment, Defendants argue that they are entitled to qualified immunity in the circumstances present here.

■ Qualified immunity attaches if an officer's conduct does not violate a "clearly established" right of which "a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). A two step inquiry is necessary in evaluating the defense of qualified immunity: (1) does the alleged conduct set out a constitutional violation, and (2) were the constitutional standards clearly established at the time in question? *See Burns v.. Reed,* 44 F.3d 524, 526–27 (7th Cir.1995). In considering the "clearly established" right, the law must be described in a particularized sense so that the unlawfulness of the actions would be apparent to a reasonable officer. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In determining the applicability of qualified immunity, "[t]he court should ask if the officer acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years after the fact." *Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir.1998), citing *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The plaintiff bears the burden of showing the existence of a clearly established constitutional right. *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.)

■ Here, it cannot be said that the conduct of Officer Selvaggio or Officer Sours constituted violations of a right that was clearly established at the time they acted. Of course it is true that prior law had established that the use of excessive force was prohibited, but no authority had established that an officer's use of a canine to apprehend a suspect who was suspected of an armed robbery and had fled from police into a residential neighborhood was unlawful. Plaintiff has not met his burden to show that the law prohibiting the officer's conduct was clearly established in this case.

Even if the law regarding use of excessive force is described in more general terms, Officer Selvaggio would be entitled to qualified immunity because no reasonable officer would have thought that the use of the dog to apprehend a suspect who had fled into a residential neighborhood would violate the

fourth amendment. The officers caught and subdued a fleeing suspect before he could inflict any more damage. This is the very opposite of unreasonable police action.

Similarly, no case had established that an officer must refrain from disposing of an unclaimed, impounded vehicle when the proper notices had been sent and when the officer did not act with bad faith. Plaintiff has failed to show any prior law that clearly established the right to be free of the disposal of his vehicle in the manner it was disposed of in this case. He has also failed to produce any evidence tending to show that even if the law were clearly established, the officers' actions were objectively unreasonable. Therefore, both Officer Selvaggio and Officer Sours are entitled to qualified immunity in this case.

### III. CONCLUSION

Plaintiff has failed to produce evidence that establishes a genuine issue of material fact regarding the reasonableness of the force used to apprehend him during the early morning hours of April 14, 1996. Also, he has failed to produce evidence that might show the existence of bad faith on the part of Officer Sours and failed to produce evidence on the issue of the apparent exculpatory value of his vehicle. Thus, Defendants are entitled to summary judgment on both counts of the amended complaint. Alternatively, the officers are entitled to qualified immunity because Plaintiff has failed to show the existence of any clearly established law of which the officers should have known when they acted. He has also failed to produce any evidence to show that the officers' actions were objectively unreasonable.

 Finally, the Court notes that Count I also contains bare allegations of violations of cruel and unusual punishment and unlawful imprisonment. But claims of cruel and unusual punishment may only be brought by convicted persons. See *Estate of Cole v. Fromm*, 94 F.3d 254, 259 n. 1 (7th Cir.1996); false imprisonment claims require a lack of probable cause. See *Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir.1991). The uncontested evidence here established that Plaintiff had not been convicted of the armed robbery when he was arrested and that probable cause clearly existed for officers to arrest him. Therefore, as a matter of law, these claims must fail.

*Ergo,* Defendants motion for summary judgment is ALLOWED.